Arthur JOHNSON, Plaintiff–Appellant,

v.

Robert MORGENTHAU, District Attorney, New York County; Leroy Frazier, Chief, Special Prosecution Bureau; and the City of New York, Defendant–Appellees.

Docket No. 97–9383

United States Court of Appeals, Second Circuit.

Calendar of July 15, 1998*.

Decided Nov. 16, 1998.

Arthur Johnson, New York City, pro se.

Mark Frazier Scholl, Assistant District Attorney, New York County (Robert M. Morgenthau, District Attorney, on the brief), for Appellees.

Before: CABRANES and REAVLEY,** Circuit Judges, and COVELLO,*** District Judge.

---

\* Pursuant to a judicial emergency certified by the Chief Judge under 28 U.S.C. § 646(b), this case was heard by a panel of three judges, only one of whom is a judge of the United States Court of Appeals for the Second Circuit.

\*\* The Honorable Thomas M. Reavley, of the United States Court of Appeals for the Fifth Circuit, sitting by designation.

\*\*\* The Honorable Alfred V. Covello, Chief Judge of the United States District Court for the District of Connecticut, sitting by designation.

PER CURIAM.

Arthur Johnson, pro se, appeals from an order of the United States District Court for the Southern District of New York (Sonia Sotomayor, Judge ) dismissing his civil rights complaint. Johnson commenced this action under 42 U.S.C. § 1983 after the District Attorney's Office of New York County declined to investigate his charges of an elaborate conspiracy involving his landlord and government agents. He alleged, inter alia, that a renegade faction of the Central Intelligence Agency ("CIA") had attempted to assassinate him by poisoning his food and water and "zapping" him with microwaves. These murderous acts, Johnson claimed, were intended to stymie his political aspirations, which included the mayoralty of New York and the presidency of the United States. Among the remedies Johnson sought were damages sufficient to allow him to mount a "serious" campaign for the presidency in the next general election and "to protect himself in the interim."

The district court determined that Johnson's action was frivolous and entered an order sua sponte dismissing his complaint prior to service of process on the defendants. See Johnson v. Morgenthau, No. 97 Civ. 7472(SS), 1997 WL 908445 (S.D.N.Y. Oct. 15, 1997). Moreover, because this was Johnson's third lawsuit involving the CIA's alleged plot to assassinate him, the district court warned him that the filing of similar actions in the future could result in the imposition of sanctions.

On July 14, 1998, one day before this Court was to hear oral argument in Johnson's timely appeal from the district court's order, a telephone caller purporting to be Johnson's sister-in-law informed the Clerk of the Court that Johnson had died. That same day, the Clerk mailed a letter addressed to the caller, requesting proof of Johnson's death and asking the individual to inform the Court as to whether Johnson's survivors wished to pursue his appeal. Cherie Johnson, Johnson's sister-in-law, responded to the Clerk's letter by submitting a copy of Johnson's death certificate (which indicates that Johnson died on May 15, 1998) and a letter stating that she and her husband "have no interest in pursuing this case."[1] No other individual has come forth seeking to pursue this appeal on Johnson's behalf.

■ As an initial matter, we note that Johnson's death has not rendered his Section 1983 action moot. Under New York law, which we must apply in these circumstances, Johnson's Section 1983 action survives his death and may be asserted by his personal representative. See Barrett v. United States, 689 F.2d 324, 331 (2d Cir.1982); N.Y. ESTATES, POWERS AND TRUSTS LAW § 11–3.2(b) (McKinney 1998 Supp.).

■ Ordinarily, the proper course to be followed upon the death of a party to an appeal is to effect a substitution pursuant to Federal Rule of Appellate Procedure 43(a). That Rule provides in pertinent part that

[i]f a party dies after a notice of appeal is filed or while a proceeding is otherwise pending in the court of appeals, the personal representative of the deceased party may be substituted as a party on motion filed by the representative or by any party with the clerk of the court of appeals.... If the deceased party has no representative, any party may suggest the death on the record and proceedings shall then be had as the court of appeals may direct.

In this case, no party has suggested Johnson's death on the record. But because Johnson's sister-in-law has provided the Court with a copy of Johnson's death certificate, we may take judicial notice of the fact that Johnson is dead.

The problem here is that no personal representative has come forward on Johnson's behalf. In fact, we do not know if Johnson has a personal representative. We know only that one of Johnson's survivors—his brother—has eschewed any interest in maintaining this appeal.

We believe that the best course under these circumstances is to dismiss Johnson's appeal without prejudice to the right of

---

1. The death certificate indicates that Johnson's brother, Russell B. Johnson, Jr., resides at the same address which Ms. Johnson provided to this Court in her telephone call and her letter declining to pursue the appeal. We assume that Russell B. Johnson, Jr., is in fact her husband and that he has been informed of this matter.

Johnson's personal representative to seek reinstatement of the appeal on Johnson's behalf—a disposition that we base on the inherent power of this Court to manage and control its docket.[2] In so holding, we note that this disposition is consistent with decisions of other courts that have addressed similar issues. *See Ward v. Edgeton,* 59 F.3d 652, 653–54 (7th Cir.1995) (appropriate course is to dismiss for lack of prosecution if personal representative has not come forward within a reasonable time); *Gamble v. Thomas,* 655 F.2d 568, 569 (5th Cir.1981) (finding implied power to dismiss in Fed. R.App. P. 43(a)).

For the foregoing reasons, the appeal is dismissed without prejudice.

---

2. In the event that Johnson's personal representative does come forward seeking reinstatement of the appeal, we will determine at that time whether, in the circumstances presented, the application is timely.