**UNITED STATES of America,**
**Plaintiff,**

v.

**David Jewell, JONES, et al., Defendants.**

**No. 4:98CR00116GH.**

United States District Court,
E.D. Arkansas,
Western Division.

June 23, 2000.

Paula Casey, United States Attorney, by Angela S. Jegley, Assistant United States Attorney, Eastern District of Arkansas, Little Rock, AR, for plaintiff.

Samuel A. Perroni, Patrick R. James, Perroni & James, Little Rock, AR, for defendants David Jewell Jones.

Russell L. Hunt, Hunt & Bell, Searcy, AR, for defendants Tony Ma, a/k/a Shiu Yun Ma.

Rita S. Looney, Little Rock, AR, for defendants Mary Ma

Robert C. Compton, Compton, Prewett, Thomas & Hickey, El Dorado, AR, for defendants Bob Newton Rushing.

Timothy O. Dudley, Little Rock, AR, for defendants Mark Justin Riable.

### ORDER

GEORGE HOWARD, Jr., District Judge.

On June 19th. Luther Sutter filed an entry of appearance as counsel for Jones[1] and filed a motion for accommodation for Jones' attorney, Sam Perroni, in the form of a continuance of the trial currently set for July 10th until September 2000. Jones argues that, as a result of surgery performed in April to remove an acoustic neuroma, Perroni has experienced disabilities of a loss of hearing on his left side, permanent tinnitus, and permanent loss of balance on his left side, which substantially impair his ability to hear, communicate, work, walk, stand, concentrate, learn, think, and pay attention to detail when compared to the average person in the normal population and that he also suffers from facial weakness and neurological fatigue disorder which will require a period of adjustment. He asserts that the combination of these disabilities will prevent Perroni from presenting an effective defense. He states that while Perroni timely notified the Court of his health problems, the Court has denied a continuance past July 10th and on June 12th ordered Jones to associate new counsel in the event Perroni is unable to participate throughout the trial or represent himself. Jones and Perroni contend that such an order is unreasonable and unconstitutional and that a continuance until at least September of 2000 is the minimum necessary for a reasonable accommodation of Perroni's disability under the Rehabilitation Act of 1973. 29 U.S.C. § 794, *et seq.*

Jones relates that Perroni has represented him for over two years and that the case has been continued a number of times including a five-month continuance for Tony Ma's new Counsel to adequately prepare for trial. He states that his counsel learned on March 25th that he had an acoustic neuroma that had to be removed without delay and that the surgery was performed on April 18th. The brief reports that Perroni is unable to speak for more than thirty Minutes at a time without encountering speech difficulties and he tires more quickly. He points to the May 11th letter of Perroni's physician that the neurological fatigue disorder would last at least four to six months and a June 15th letter from the physician that he does not believe that Perroni would be mentally or physically capable of participating in the four to six week trial scheduled for July 10th. Jones continues that Perroni needs time to cope with his hearing loss, loss of balance, and tinnitus. He quotes from the exhibits that efforts should be made to avoid nervous anxiety as that usually increases the noise in the head. that some patients may notice for as long as several years unsteadiness when extremely fatigued, and facial weakness usually clears

---

1. The motion states that Sutter is entering his appearance only to seek reasonable accommodation and that he is not experienced in white collar crime matters.

up in one to three months after surgery but may at times take up to one year.

Jones argues that Perroni is disabled under the Rehabilitation Act since he suffers from several major life activities, that Perroni is an otherwise qualified individual because he is qualified to practice law and try a case in federal court with a reasonable accommodation, and that a continuance at least until September would be a reasonable accommodation since continuances are a common legal practice, it has long been recognized that bad health is a reason justifying a continuance and continuances have already been granted on several occasions here. He contests the continuance of the trial to July 10th and the order to associate stand-by counsel as reasonable accommodation since the trial is long before the point his physicians have estimated that he will have adjusted to his disabilities sufficient to allow a proper defense, the forced association of new counsel is impracticable when it would take Perroni, himself who is familiar with the case one month solid to prepare for trial, and that forced association of new counsel is not constitutional.

On June 20th, the Court received courtesy copies of a petition for writ of mandamus or writ of prohibition with supporting brief and exhibits and a separate motion for stay pending review that had been filed with the Eighth Circuit Court of Appeals. The motion requests a stay pending a determination by the appellate court about the legality of this Court's May 16th and June 12th orders denying a continuance past July 10th and directing Jones to retain "standby counsel" or be prepared to represent himself if Perroni was unable to complete the trial. The petition seeks a writ preventing this Court from taking the actions in those orders and submits that there is an inference of bias and appearance of impropriety such that the case should be reassigned to a different district judge. Listed as attorneys for Jones on the Eighth Circuit filings are Perroni and his law partner Pat James.

The government filed, on June 21st, a combined response to the motion for accommodation and a motion for supplemental findings. The government contends that the continuance issue has been litigated twice on May 16th and June 9th. Jones is seeking reassignment to a different judge although this Court has not been asked to recuse, and Sutter has made a limited appearance despite the requirement for random assignment and the prohibition of attorney interference since Sutter, who is on this Court's list, is a friend of defendant Riable. It asserts that Perroni is not a qualified individual for tile protections of the ADA as a matter of law since he cannot work according to Jones' motion, that the Court has accommodated Perroni although not required to do so, and that this Court has the authority to control the administration of justice. The government, relying on case cited by Jones, states that tile ADA only protects individuals who can perform their job at the time upon which an accommodation is requested and Perroni has stated that he cannot try this case on July 10th and that the inability to work while recovering from surgery is not a disability.

The government requests the Court to find that Jones and his attorney have willfully abused the discovery process in order to gain an unfair tactical advantage at trial, made material misrepresentations concerning the Letters Rogatory that Perroni's social calendar has taken precedence over the Court's trial docket, that the failure to stipulate to the Letters Rogatory in November resulted in a continuance that meant that the government lost an important witness by death in March that would not have happened if the trial had been allowed to proceed on January 5th, that Jones' counsel manipulated the trial process in denying that he was ordered to associate counsel on May 16th, that his counsel have filed vexatious motions contrary to ethical requirements, and the argument that cannot be associated is in bad faith since Pat James is listed along with Perroni on the petition for writ of mandamus or for prohibition.

Before addressing the merits of the motion for accommodation, the Court must consider the ramifications of Sutter's entry of appearance. By order filed on June 1st in the case of *Harris v. Lester*, 4:99cv 00320 GH. the Court filed an order of recusal due to family members of the Court and family members or the plaintiff's attorney. Sutter, having recently participated in religious and church activities. By memo dated June 2nd, Sutter was added to the Court's recusal list. On June 7th, Sutter personally visited with several of this Court's staff members and received clarification that the recusal would be in the cases where he was attorney of record and would apply to him personally and not other members of his firm. The attachments to the June 19th motion for accommodation clearly show that Sutter was aware when he entered his appearance here that the undersigned was the judge assigned to this case.

In the case of *In re F.C.C.*, 208 F.3d 137 (2nd Cir.2000), the appellate court, sua sponte, held that it would not permit the appearance of a law firm before that court for rehearing since a former partner of that firm was on the appellate panel. Relevant portions of that opinion at p.p. 139–140 follow:

> Once the members of a panel assigned to hear an appeal become known or knowable, counsel thereafter retained to appear in that matter should consider whether appearing might cause the recusal or a member of the panel. We make no finding as to good faith or intent by the estimable lawyers of Gibson. Dunn. It is clear, however, that tactical abuse becomes possible if a lawyer's appearance can influence the recusal of judge known to be on a panel. Litigants might retain new counsel for rehearing for the very purpose of disqualifying a judge who ruled against them. As between a judge already assigned to a panel, and a lawyer who thereafter appears in circumstances where the appearance might cause all assigned judge to be recused. the lawyer will go and the judge will stay. This practice preserves the neutral and random assignment of judges to cases, and it implements "the inherent power of this court to manage and control its docket." *Johnson v. Morgenthau*, 160 F.3d 897, 899 (2d Cir.1998) (per curiam). So the failure of counsel to consider in advance the known or knowable risk of a judge's recusal may result in the rejection of the appearance by that lawyer or firm. We appreciate that there are circumstances in which a lawyer may unwittingly provoke a recusal and that the application of this rule may therefore inflict hardship in some cases. But we announce this rule in a case in which there could be no adjust hardship. The lawyer who argued the appeal remains. We assume that lawyers know who their partners are and have been. And we expect that lawyers will take pains to avoid appearing in any case in which their appearance may cause disqualification of judge assigned to the case.

Given the Court's May 16th denial of continuance until September, the addition of Sutter to the Court's recusal list just three weeks ago, his knowledge of his placement on that recusal list, Sutter's subsequent entry of appearance knowing this case had been assigned to the undersigned, and the application of the legal principles in *In re F.C.C.*, Sutter will not be permitted to appear on behalf of Jones. Although this decision regarding, Sutter does not involve any finding as to intent or good/bad faith by the entry of appearance, the Court observes that Jones has requested reassignment of the case by the Eight Circuit to a different district judge due to bias and art appearance of impropriety.

Jones along with four other individuals were indicted oil July 7, 1998. Riable appeared for arraignment on July 15, 1998, and the co-defendants were arraigned on July 16, 1998. A trial date of September 14, 1998v was set.[2] By order filed on

---

2. At page 2 of the petition for writ of mandamus or writ of prohibition, Jones states that

August 17, 1998, tile Court granted Riable's motion for continuance and the case was rescheduled for November 30.1998. The trial was rescheduled for April 19, 1999, pursuant to the defendants' joint November 25, 1998 motion for continuance. The Court granted Jones' motion for continuance on December 21.1998, and reschedule the trial to May 17, 1999. The Court placed all counsel on notice that that setting was a firm trial date.

By January 19, 1999 order, the Court granted the government's motion for a brief continuance and rescheduled the trial for May 24, 1999. On April 20, 1999, the Court granted Tony Ma's motion for a continuance due to newly appointed counsel because of a representational conflict and rescheduled the trial for August 30, 1999. By May 27, 1999 order. the Court granted motions for continuance by Riable and Rushing and, because to various counsels' calendars that fall, the case was reset for January 5th trial. On November 17th, the trial was continued to June 5th pursuant to a motion filed by Jones as joined by, Rushing and Mary Ma. that was vigorously opposed by the government.[3] The Court advised counsel that the June 5th date was firm and no further continuances would be granted absent extraordinary and unexpected circumstances. Counsel were warned that calendar conflicts of counsel or witnesses due to business or family commitments would not constitute good cause. Tile order Further provided that this notice more than six months prior to trial would permit all counsel to make alternative arrangements or to associate other counsel if needed.

"[t]he original trial date in this case was set for September 14, 1998, barely two months after the filing of tile July 7, 1998, indictment." 18 U.S.C. § 3161(c)(*l*) provides in relevant part that "[i]n any case in which a plea of not guilty is entered, the trial of a defendant charged in all information or indictment with the commission of an offense shall commence within seventy days from the Filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is

By April 26th letter from Pat James, the Court was advised of Perroni's surgery. The letter acknowledges the time that has been invested in the interpreter problems and that the Court was on the verge of sending out juror questionnaires.[4]

On May 15th. Jones filed a Supplemental motion for a continuance of the June 5th trial. The Court had a member of its staff telephone counsel for the government and request an expedited response he faxed to Helena where the Court was holding trial. A telephone conference was held the morning of May 16th. The Court heard arguments on the health of Perroni. the effects of the April 18th surgery and its effect on his ability to prepare and endure a four to six week trial, and the request for a continuance of at least three months to recover from the fatigue that his doctor anticipated he would experience for four to six months from the date of surgery. The Court also heard tile government's opposition based on Jones claims of diligence in discovery, motions and with previous continuance requests; its loss of an important witness: and its suggestions in expediting the trial to reduce length and for him to associate other counsel.

After hearing the argument of counsel, the Court stated, in relevant part the following:

> Recognizing that both the government and defendants are entitled to due process of law and I'm going to strive diligently to make sure each side receives due process of law. We're going to continue this case until July 10, 2000

pending. whichever date last occurs." Thus, a trial setting "barely two months after ... the indictment" was simply complying with the mandate of the Speedy Treal Act.

3. The criminal trial of *United States v. Wilson*, 4:99CR00061 GH. was to commence on March 6th and Last three to four months. Ultimately, that trial only involved three defendants and lasted seven weeks.

4. The potential panel appeared on April 26th and completed the questionnaires.

Now. I think Mr. Dudley can say amen to this. In the Bearden, Todd and Bell case one of the government's key witnesses had a heart problem. We had to continue that case for about a week. That witness returned and I want to commend those lawyers. They worked together to accommodate that witness' medical concerns. We recessed promptly. There was a nurse on call or on standby to assist her.

I'm also persuaded that the attorneys sort of entered into stipulations in order to move that case along to make sure that both sides received due process of law and that the system would not be manipulated. I want to commend those lawyers for taking that stand.

So I'm going to Urge the attorneys to see if you can't sit down and enter into some stipulations that might help expedite this case.... **** Now, I'm not being facetious. but in an effort to accommodate both sides. I'm going to urge counsel to take the necessary steps to get assistance. the court will be most lenient in granting a recess or whatever to accommodate any problems or concerns and to make sure that each side has its or his day in court.

The May 16th order provided, in part, that:

This new trial date is three months subsequent to the surgery and gives Jones' Counsel an additional five weeks from June 5th in which to regain his strength and associate assistance from other counsel in his office to prepare and try the case. The Court has weighed the bases for the previous continuance requests, the potential prejudice to the government's evidence by a delay, and the apparent unforeseen necessity of the surgery and its after effects on Jones counsel in reaching this decision. The Court is prepared to be lenient in granting frequent recesses during the trial to accommodate his fatigue factor. To shorten the estimated trial-time, counsel for all parties are urged to enter into stipulations to expedite the presentation of evidence especially that through custodians.

Thereafter, on May 31th, the government filed a second motion for hearing on trial status to determine whether counsel had been associated. The Court had a staff member telephone Jones' counsel and request an expedited response. The response was filed on June 6th. On June 8th, the Court filed an order scheduling a conference for June 9th on the government's motion and directed Jones and his counsel to appear in person in chambers while counsel for the government and the co-defendants would participate by telephone. Although the Court could have rendered a decision solely on the government's motion and Jones response, the Court, given its familiarity with Perroni's pre-operative appearance and his legal presentations, felt it would be beneficial to personally observe Perroni for comparison. Nothing in Perroni's physical appearance, gait, speech or mental acuity during the conference gave the Court concern. Since any ruling the Court made on the motion would directly impact Jones, the Court wanted Jones to personally appear so that he would have a full understanding of the Court's decision.

Counsel for all parties were permitted to present their positions regarding the government's motion. At the conclusion the Court advised Jones that while he had a right to choose his retained attorney, that right was not absolute and had to be balanced against the public's need for the "efficient and effective administration of criminal justice" as well as the need for the Court's calendar control. The Court then reviewed the previous trial settings and continuances. The Court stated that another circumstance considered by the Court was that the Clerk's Office within the next several days would be engaging the service of interpreters and translators for use during the course of the trial, which not only embraces a specific time frame in order to accommodate the interpreters. but involves an extensive mone-

tary commitment as well. The Court further noted that, the current status of the Court's docket if this action were continued, would not permit this action to be rescheduled and tried during this calendar year. An additional factor considered was that one witness for the government has died during the pendency of this case.

In order to avoid problems of that nature with witnesses, not only for the government, but all participants, the Court directed Jones to promptly retain other counsel to associate with his current attorney. Perroni, so that in the event Perroni's health prevents or compromises his ability to represent Jones during the course of the trial, the associate may represent Jones and avoid any inconvenience to Jones or delay the trial. Jones was advised that he could apply for court-appointed counsel if he is eligible financially. Jones was placed on notice that if he did not adhere to the above directive, he is to be prepared to represent himself during the course of the trial unless Perroni is able to return and participate as counsel if the case has not ended

Perroni referenced the May 16th order about the Court being prepared to be lenient in granting frequent recesses during the trial to accommodate his fatigue factor. The Court stated that was still available any time he needed and he would give Perroni considerable leeway to make sure Jones was afforded due process of law and Perroni had the opportunity to represent his client, but the Court did not want it abuse. It was also agreed that the trial would be recessed every other Friday starting, the first week.

Before examining the substance of the motion for accommodation, the record should be clear that the January 19th motion for submission of a jury questionnaire filed by Jones under seal had an attached proposed questionnaire. Jones' proposed Question No. 47, with the emphasis in the original. states "[d]o you have any other condition affecting your hearing, memory or other faculties (either mental or physical) which would in any way limit or interfere with your ability to serve as a juror from 9:00 a.m. to 5:00 p.m. Monday through Friday for **three to five** weeks?"

During the May 16th telephone conference, Perroni stated that "...it became obvious in the last week when I learned— maybe this information had crossed the file here before now but it apparently didn't sink in anyway, but when I learned the government was predicting the case would take four to six weeks to try. I had been operating on the proposition that we could try the case in two to three weeks." While the Court modified Jones' proposed Question No. 47 by extending the possible length by one week, it is disingenuous, in light of his own January submission, for Perroni to state that he learned for the first time after his surgery that the government was estimating that the trial would take four to six weeks rather than two to three weeks.[5]

Although the government has questioned whether Perroni is a qualified individual under the ADA [6] since he cannot perform his job at the time upon which an accommodation is requested,[7] the Court assuming, without deciding, that Perroni is a qualified individual with a disability. See. 29 U.S.C. § 794(a). Thus, the Court turns to the issue of accommodation.

The following relevant definitions are contained at 29 C.F.R. § 1630.2:

  o) Reasonable accommodation.

    (1) The term reasonable accommodation means:

    ****

---

5. Perroni was provided with copies of the competed questionnaires on May 1st.

6. The legal principles applicable to the ADA are equally applicable to the Act. *Perkins v. St. Louis Co. Water Co.*, 160 F.3d 446 (8th Cir. 1998).

7. The inability to work while recovering from surgery is not a disability under the ADA. *Gutridge v. Clure*, 153 f.3d 898 (8th Cir.1998): *Heintzelman v. Runyon*, 120 F.3d 143 (8th Cir.1997)

(ii) Modifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position: or

(iii) Modifications or adjustments that enable a covered entity's employee with a disability to enjoy equal benefits and privileges of employment as are enjoyed by its other similarly situated employees without disabilities.

(2) Reasonable accommodation may include but is not limited to:

(i) Making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and

(ii) Job restructuring; part-time or modified work schedules; reassignment to a vacant position; acquisition or modifications of equipment or devices; appropriate adjustment or modifications of examinations, training materials, or policies; the provision of qualified readers or interpreters: and other similar accommodations for individuals with disabilities.

(3) To determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate all informal, interactive process with the qualified individual with a disability in need of the accommodation. This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.

p) Undue hardship—

(1) In general. Undue hardship means, with respect to the provision of an accommodation. significant difficulty or expense incurred by a covered entity, when considered in light of the factors set forth in paragraph (p)(2) of this section.

(2) Factors to be considered. In determining whether all accommodation would impose all undue hardship on a covered entity, factors to be considered include:

(i) The nature and net cost of the accommodation needed under this part, taking into consideration the availability of tax credits and deductions, and/or outside funding;

(ii) The overall financial resources of the facility or facilities involved in the provision of the reasonable accommodation, the number of persons employed at such facility, and the effect on expenses and resources;

(iii) The overall financial resources of the covered entity, the overall size of the business of the covered entity with respect to the number of its employees, and the number, type and location of its facilities;

(iv) The type of operation or operations of the covered entity, including the composition, structure and functions of the workforce of such entity, and the geographic separateness and administrative or fiscal relationship of the facility or facilities in question to the covered entity; and

(v) The impact of the accommodation upon the operation of the facility, including the impact on the ability of other employees to perform their duties and the impact on the facility's ability to conduct business.

■ Besides the accommodation issue under the Rehabilitation Act. the Court is also constrained by the dictates of the Speedy Trial Act. As referenced before in this order, a case is to be tried within seventy days unless certain exclusions apply.[8] 18 U.S.C. § 3161(h)(8)(A) provides an exclusion for "[a]ny period of delay

---

8. 18 U.S.C. § 3161(h)(8)(c) specifies that no continuance shall be granted because of general congestion of the Court's calendar.

resulting from a continuance granted ... at the request of the defendant or his counsel ... if the judge granted such continuance on the basis or his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(8)(B) lists such factors that include those relied upon by Jones in the May 15th supplemental motion for continuance that a failure to grant a continuance would likely result in a miscarriage of. justice and would deny counsel for the defendant a reasonable time necessary for effective preparation taking into account the exercise of due diligence.[9]

The Court's May 16th and June 9th orders resulted from the balancing of the health of Perroni the interests of all the defendants and the public in a speedy, trial including that one of the government's witnesses had died and Jones and Rushing were in their early seventies. The doctor had anticipated Perroni would experience fatigue for four to six months from the date of surgery so the Court continued the trial to July 10th, three months subsequent to the surgery and an additional five weeks from June 5th Perroni could regain his strength and associate assistance from other counsel in his office to prepare and try the case. The Court took other steps such as announcing leniency in the granting of frequent recesses during the trial to accommodate Perroni's fatigue factor and during stipulations by counsel to expedite the presentation of evidence. When faced with the government's second motion for bearing on trial status, the Court, in order to avoid problems should Perroni not be able to complete the trial, imposed that Jones either retain additional counsel or be prepared to try the case himself. By later pleadings, the identity of the deceased witness was revealed which confirmed the government's characterization of this witness as important and that his death occurred in March. Another factor to be balanced in the May continuance motion

and the current accommodation request is the interpreters for Tony and Mary Ma so they can understand the proceedings and for the Chinese speaking witnesses. Obtaining the interpreters has been a major Undertaking involving the announcement and receipt of bids and the authorization from the Administrative Office in the signing of the contracts. Plans have already been made in the arrangement of the Courtroom seating to accommodate Perroni's left ear hearing loss.

Thus, the Court has made reasonable accommodation for Perroni under the Rehabilitation Act and it would be an undue hardship to (grant the accommodation he seeks of a continuance until September). Moreover, there is no assurance. based on the worse-case scenarios in the motion's exhibits. that even if a continuance to September could be made in a vacuum that Perroni would consider himself able to try this case then. The Court would then be faced with either continuing the trial once more or imposing the conditions of June 9th which he would again resist.

Although Jones claims in his June 19th affidavit (Exhibit C in support of the petition filed with the Eighth Circuit) that he has not retained "co-counsel for the trial of my case at any, time during the course of this matter." the docket sheet reflects that on July 16, 1998. Pat James appeared along with Perroni as counsel for Jones at the plea and arraignment and that James still remains as co-counsel of record for Jones.

In light of this ruling on the motion for accommodation, the Court is persuaded that supplemental findings as requested by the government are unnecessary.

Accordingly, the Clerk is directed to remove Luther Sutter's name as co-counsel for Jones. The June 19th motion (# 349) for accommodation filed by Jones and the

9. Jones substituted "thorough" for "effective" in his motion. He also relied on 18 U.S.C.

§ 3161(h)(1)(F) that provides for an exclusion due to the pendency of a pretrial motion.

government's Julie 21th motion (# 357) for supplemental findings are denied.