### UNITED STATES v. COORDINATED TRANSPORT, Inc.
#### No. 46 C 1372.

District Court, N. D. Illinois, E. D.
June 23, 1947.

J. Albert Woll, U. S. Dist. Atty., of Chicago, Ill., for plaintiff.

Harold E. Marks and George F. Vonkolnitz, Jr., both of Chicago, Ill., for defendant.

SULLIVAN, District Judge.

This is a suit on a contract entered into by the Government and the defendant company whereby the defendant agreed to pay the Government for the temporary services which theretofore had been and which thereafter would be rendered by drivers and dockmen furnished by the Government to defendant. Defendant is, and was during all of the times material to this action, a motor carrier engaged in the trucking business in Chicago, Illinois.

On May 23, 1945, while this country was at war, the President of the United States issued Executive Order No. 9554, which authorized the Director of the Office of Defense Transportation to assume control of such plants, facilities or transportation systems owned or operated by motor carriers in or about the City of Chicago, as were then about to be interrupted in their operations by reason of labor disturbances.

Under the terms of the Executive Order the Director of Defense Transportation was either to operate, or arrange for the operation of said transportation systems in such manner as he deemed necessary for the successful prosecution of the war.

Accordingly, on May 23, 1945, the Director of Defense Transportation, pursuant to the President's Executive Order, issued a notice and order directed "to each motor carrier engaged in the transportation of property in or about the City of Chicago, whose operations are being interrupted by reason of a labor disturbance." The order notified each carrier that "possession and control of your motor carrier transportation system, including all real and personal property, facilities and other assets, wherever situated, used or useful in connection with the operation of such system, are hereby taken and assumed by me as Director of the Office of Defense Transportation * * *."

The notice and order appointed Ellis T. Bongenecker as Federal Manager of Motor Carrier Transportation Systems and Properties, and among other things directed him "to operate or to arrange for the operation of said plants, facilities and transportation systems in such a manner as he may deem necessary for the successful prosecution of the war and do anything that he may deem necessary to carry out the provisions and purposes of this order."

June 29, 1945, the Government sent to defendant the contract here in question, for defendant's signature. On July 2, 1945, defendant executed said agreement, wherein it agreed to pay the Government for such services as had theretofore been rendered and might thereafter be rendered by drivers and dockmen furnished by the Government for defendant's use in connection with carrying on its transportation system, the amount of such compensation to be determined "by applying the time such drivers and dockmen spent in performing services for defendant at the rates of pay currently in effect on defendant's transportation system." Defendant failed to pay any of such agreed amounts, and therefore on August 1, 1946, the Government filed the present complaint.

Defendant answered the complaint, admitting the issuance of the Governmental

orders, the signing of the contract and the receipt of the services of drivers and dockmen furnished by the Government, but sets up as a defense (1) that the plaintiff had no power to enter into such a contract; (2) that the contract as to defendant was ultra vires; (3) that defendant signed said contract under duress; (4) that the contract is based on a past consideration.

October 9, 1946, under Rule 36, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, defendant requested the Government to make certain admissions for the purposes of this action, and on February 25, 1947, the Government answered admitting that the persons designated in the complaint as "drivers and/or dockmen" and for whose services the Government seeks to recover from defendant in this action, were, on the dates set forth in Paragraph 6 of the complaint, "uniformed soldiers of the Army of the United States, on active duty as such in time of war, and received their pay in accordance with the statutes of the United States providing for pay for the army."

March 13, 1947, the Government filed a motion for judgment on the pleadings, which motion is now before this court for disposition.

The President's Executive Order authorized the Office of Defense Transportation to request the Secretary of War to furnish protection for the transportation systems in Chicago as were then about to be interrupted in their operations by reason of labor disturbances; and also to furnish equipment, manpower and other facilities and services deemed necessary to carry out the provision of the Executive Order. Pursuant thereto the Federal Manager chose the contract here sued on as the most feasible means of operating or arranging for the operation of defendant's transportation system.

Because of the fact that the motor truck drivers in the Chicago area had gone on strike, which threatened to paralyze motor transportation in that area to the great detriment of carrying on the war effort, the Government took possession and control of defendant's transportation system, and undertook to and did under the contract in question furnish drivers and dockmen to enable defendant to carry on its motor transport systems, which had been hindered and interrupted by reason of lack of such drivers and dockmen.

Defendant now urges that because the drivers and dockmen furnished to defendant to aid in the operation of its trucks were members of the armed forces it is illegal for the Government to make the charge provided for in the contract for their services; that while the Government did actually furnish men to drive, load and unload the trucks, nevertheless the Government is not justified in charging defendant for these services on the ground that the Government might thereby make a monetary profit for the service performed by the armed forces, in that the sum charged under the contract would be in excess of the sums paid to its soldiers by the Government, pursuant to statutory authority, and therefore that the Government had no power to enter into such a contract. I do not believe that there is any merit in this defense.

Defendant nowhere contends that the contract here involved is unlawful or against public policy. In answering the interrogatories propounded by plaintiff, pursuant to Rule 33, defendant answered that it was within the powers of Coordinated Transport, Inc., defendant here, to enter into contracts for the services of drivers and dockmen; and that there was no prohibition in defendant's corporate charter against its entry into contracts with the Government. Under the contract here sued on the Government furnished to defendant the drivers and dockmen which it required in order to restore its normal motor transportation operations. In United States v. Maurice et al., 1823, Fed.Cas. No. 15,747, Circuit Justice Marshall said:

"The United States is a government, and, consequently, a body politic and corporate, capable of attaining the objects for which it was created, by the means which are necessary for their attainment. This great corporation was ordained and established by the American people, and endowed by them with great powers for important purposes. Its powers are unquestionably limited; but while within those limits, it is a

perfect government as any other, having all the faculties and properties belonging to a government, with a perfect right to use them freely, in order to accomplish the objects of its institutions. It will certainly require no argument to prove that one of the means by which some of these objects are to be accomplished, is contract; the government, therefore, is capable of contracting, and its contracts may be made in the name of the United States. * * *

"Without entering on the inquiry respecting the limits which may circumscribe the capacity of the United States to contract, I venture to say that it is co-extensive with the duties and powers of government. Every contract which subserves to the performance of a duty, may be rightfully made. The constitution, which has vested the whole legislative powers of the Union in congress, has declared that the president 'shall take care that the laws be faithfully executed.' The manner in which a law shall be executed does not always form a part of it; a power, not limited or regulated by the words of the acts, has been given by the legislature to the executive, to construct fortifications; and large sums of money have been appropriated to the object. It is not and cannot be denied, that these laws might have been carried into execution by means of contract; yet, there is no act of congress, expressly authorizing the executive to make any contract in the case. It is useless, and it would be tedious, to multiply examples, but many might be given to illustrate the truth of the proposition. It follows, as a necessary consequence, that the duty, and of course the right, to make contracts may flow from an act of congress, which does not in terms prescribe this duty; the proposition then is true, that there is a power to contract in every case where it is necessary to the execution of a public duty."

I believe that the contract here in question was made by the Government in furtherance of a public duty and as a means of carrying out a lawful object, and has been fully performed by the Government. Defendant on its part voluntarily entered into the contract in order that its business might be carried on, and is now bound by it. I am of the opinion that this is not a contract prohibited by law and therefore ultra vires the power of the Government to make, on the ground, as urged by defendant, that the Government has no right in time of war to charge certain of its citizens for the services of soldiers in addition to the compensation and support provided for them by Congress. In my view of the case defendant, under this contract, was not charged for the services of soldiers. It was expressly agreed in the contract that no charge would be made by the Government for protection of defendant's transportation system, and no claim is made by the Government for such services. I fail to understand defendant's insistence that the services furnished by the Government under this contract should be at no cost to defendant, when defendant in customarily carrying on its business paid to its employees the same amount as is provided in the contract for the same kind of services. The claim made by the Government is only for services rendered by drivers and dockmen used in the actual operation of defendant's business during the period of the strike, and from which operation defendant derived the benefit and the income. If defendant's employees had not been on strike they would have been performing these same services, and no one will dispute that they would have been entitled to compensation for them. Because of the strike defendant requested the Government to furnish the necessary personnel to enable it to carry on its usual business, and defendant, in its contract with the Government, agreed to pay at the rates currently in effect on defendant's tranportation system.

I am of the opinion that plaintiff is entitled to payment under the contract here in question, and its motion for judgment on the pleadings is allowed.