**UNITED STATES v. SALON.**

No. 10092.

United States Court of Appeals
Seventh Circuit.

May 22, 1950.

Harold E. Marks, George F. Von Kolnitz, Jr., Chicago, Ill., for appellant.

Otto Kerner, Jr., U. S. Atty., William Sylvester White, Jr., Asst. U. S. Atty., Chicago, Ill., John Peter Lulinski, Asst. U. S. Atty., Chicago, Ill., for appellee.

Before FINNEGAN, LINDLEY and SWAIM, Circuit Judges.

FINNEGAN, Circuit Judge.

This is an appeal from a judgment for plaintiff, entered in the District Court on complaint, answer and stipulation of facts; it was submitted to this court on briefs without oral argument.

The Government filed its complaint to recover for services rendered under the terms of a written contract with the defendant, who was a motor carrier engaged in the trucking business, in Chicago, Illinois.

On May 23, 1945, while the country was at war, the President of the United States issued Executive Order No. 9554 authorizing and directing the Director of the Office of Defense Transportation to take possession and assume control of such plants, facilities or transportation systems owned or operated by motor carriers in or about the City of Chicago which were then interrupted, or about to be interrupted, in their operation by labor disturbances.

Among other provisions of said Executive Order are the following: "The Director of the Office of Defense Transportation is authorized and directed, through or with the aid of any public officers, Federal agencies, or other government instrumentalities that he may designate, * * to operate or to arrange for the operation of the said plants, facilities, and transportation systems in such a manner as he may deem necessary for the successful prosecution of the war; *and do anything that he may deem necessary to carry out the provisions and purposes of this order.*"

Pursuant to said Executive Order the Director of the Office of Defense Transportation, on May 23, 1945, issued a notice and order taking possession and control of the transportation systems of motor car-

riers subject to the Executive Order, and appointing Ellis T. Longenecker Federal Manager of such systems. His order of appointment provided:

"The purpose of possession, control, and operation of motor carrier transportation systems and properties by the United States, pursuant to said Executive Order, is to assure the maintenance of an effective system of transportation for the movement of troops, materials of war, supplies, and food for the armed forces and civilian population.

"To possess, control, and operate, or arrange for the operation of, each of the systems and properties taken hereunder in such manner as may be necessary for the successful prosecution of the war and maintenance of essential civilian economy and to accomplish the purposes of the Executive Order, through or with the aid of such public or private agencies, persons, or corporations as he may designate.

"Subject to the provisions of the Executive Order, to manage or operate, or arrange for the management or operation of said systems and properties under such terms and conditions of employment as he deems advisable and proper."

When the Federal Manager took possession and control of defendant's transportation system, he found the drivers and dockmen on strike.

On July 2, 1945, the appellant-defendant entered into a written contract with the plaintiff, The United States, whereby the carrier agreed to pay the Government for services rendered by drivers and dockmen furnished by the Government for use in the operation of the defendant's transportation system. The contract provided for the manner of determining the payment for such services, as well as the time and place for making such payments.

At the defendant carrier's request, the Government furnished 18 men who worked for a total of 230 hours in serving the carrier as drivers and dockmen. Computed on the basis of the contract, the services thus rendered amounted to $208.94, of which sum the carrier paid the Government $11.13, leaving a balance of $197.81.

Defendant stipulates that he signed the contract, and, that, at his request, services were rendered as claimed in the complaint, but contends that the contract is *ultra vires* on the part of the Government; that the employees furnished were soldiers who were performing military service on behalf of the Government in rendering assistance in the operation of defendant's transportation system, and that the Government has no right to make a profit for such services.

The record discloses that the drivers and dockmen furnished to the defendant by the Government, were in fact soldiers on active duty in the Army of the United States who were paid their statutory wages by the Department of War.

Appellant raises no question as to the power in the President to issue Executive Order No. 9554 to take possession and control of his system under the existing conditions in furtherance of the war effort. He makes no issue of the legality of using soldiers in executing said order. He does not complain that soldiers drove his trucks while his civilian drivers were on strike. In fact, he admits everything the Government charges, but seeks to have the contract he entered into declared unenforceable. He questions the power of the Government to enter into the contract we have before us.

■ The United States Government has a capacity to contract which is co-extensive with its duties and powers. In United States v. Tingey, 5 Pet. 115, 30 U.S. 115, on page 127, 8 L.Ed. 66, the Court said:

"Upon this posture of the case, a question has been made and elaborately argued at the bar, how far a bond, voluntarily given to the United States, and not prescribed by law, is a valid instrument, binding upon the parties in point of law; in other words, whether the United States have, in their political capacity, a right to enter into a contract, or to take a bond, in cases not previously provided for by some law. Upon full consideration of this

subject, we are of opinion, that the United States have such capacity to enter into contracts. It is, in our opinion, an incident to the general right of sovereignty; and the United States being a body politic, may within the sphere of the constitutional powers confided to it, and through the instrumentality of the proper department to which those powers are confided, enter into contracts not prohibited by law, and appropriate to the just exercise of those powers. This principle has been already acted on by this court in the case of Dugan, Exec. v. United States, 3 Wheat. 172, 4 L.Ed. 362; and it is not perceived that there lies any solid objection to it. To adopt a different principle, would be to deny the ordinary rights of sovereignty, not merely to the general governments, but even to the state governments, within the proper sphere of their own powers, unless brought into operation by express legislation. A doctrine, to such extent, is not known to this court as ever having been sanctioned by any judicial tribunal."

It seems to us that the sole issue is whether the Government after rendering services to a private citizen in the operation of his business, and at his request, is precluded from enforcing a contract providing for payment of such services by the fact that they were rendered by soldiers in time of war. It should be noted that the Government does not seek recovery for services rendered in protecting defendant's property or in furnishing convoy escort to his vehicles.

Under the circumstances in this case, the Government was faced with a public duty and had the right to enter into a contract to carry out that duty. In United States v. Maurice, 1823, Fed.Cas.No. 15,747, Circuit Justice Marshall, in speaking of the power of the Government to contract, said: "that there is a power to contract in every case where it is necessary to the execution of a public duty."

The President had the power to issue Executive Order No. 9554, and had the power to delegate his authority, and did delegate that authority to the Director of Defense Transportation, who named a Federal Manager. The strike in the appellant's transportation system interfered with its operation and with the war effort. Civilian drivers and dockmen were on strike, therefore soldiers of the Army served as such under voluntary written agreement made with the appellant-defendant. The latter agreed to pay for such services. The Government had fulfilled its part of the contract in the execution of its duty and in furtherance of the war effort.

United States v. Coordinated Transport, Inc., D.C., 73 F.Supp. 176, involving substantially the same facts as are presented on this appeal, before the same trial judge, and with the same attorneys representing the defendants, was not cited by either party on this appeal. In that case the District Court found for the plaintiff as it did in the case before us.

Nevertheless, in appellant's brief on page 4, we find the statement: *"So far as we have been able to find, the question here involved has not heretofore been presented to any court for decision."* This is rather an extraordinary statement since the Coordinated Transport case had been decided and reported more than two years before the trial of the case here under review. Moreover, counsel for defendants in that case represent defendants in the case now before us.

After review of the record and consideration of the arguments advanced in appellant's brief, we find that the findings of fact made by the trial court are supported by substantial evidence and that its conclusions as to the law are correct.

The judgment of the District Court is therefore affirmed.