Tyrone TERRY, Petitioner,

v.

Carolyn CROSS, Warden, Respondent.

No. Civ.A. 99–661–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Sept. 14, 2000.

Tyrone W. Terry, Lawrenceville, VA, petitioner pro se.

Jeffrey Scott Shapiro, Assistant Attorney General, Richmond, VA, for respondent.

## MEMORANDUM OPINION

ELLIS, District Judge.

In this *pro se* petition, brought pursuant to 28 U.S.C. § 2254, petitioner asserts several claims, including a plausible claim of actual innocence based on a significant question concerning the accuracy

of the trial transcript. For the reasons that follow, certain claims are procedurally defaulted and must be dismissed, while others, including the claim of actual innocence, require an evidentiary hearing to determine certain essential facts.

### I.

Petitioner Tyrone Terry ("Terry") attacks the validity of his November 1, 1995 conviction for statutory rape in the Circuit Court of the City of Richmond. Terry's prosecution commenced on July 3, 1995, when a grand jury indicted him for the rape of a child under the age of thirteen, in violation of Virginia Code § 18.2–61.[1] The evidence presented at the September 28, 1995 trial was summarized by the Court of Appeals of Virginia as follows:

The evidence proved that at the time of the offense the victim (N.F.) was twelve years old. One evening during April 1994, N.F.'s mother, a private duty nurse, had to stay overnight at a patient's home. The mother asked [Terry], a close friend, to house-sit for her. [Terry] and N.F. were alone in the house that evening. Around 3:00 a.m., [Terry] entered N.F.'s bedroom and raped her.

A few months after the rape, N.F. told her friend "Huck" that [Terry] had raped her. She did so after "Huck" told her about his niece having been raped. He encouraged N.F. to tell her mother, but she feared her mother would not believe her. N.F. testified that she also felt partially responsible for the rape because she had asked her mother if she could stay home that night. N.F. further testified that she did not tell her

father because she feared he would become angry, injure [Terry], and end up in jail. Sometime after N.F. told "Huck" about the rape, she told her friend, Latisha. While discussing the rape with these two friends, "Huck" threatened to tell N.F.'s mother if she did not. N.F. telephoned her mother, met her at home, and told her about the rape. The mother immediately called the police.

Over defense counsel's objection, the mother testified that N.F. called her on February 10, 1995, and said she wanted to talk. N.F. then reported that [Terry] had raped her in April 1994. The trial judge ruled that the ten month delay in reporting the rape had been sufficiently explained and ruled the evidence admissible.

*Terry v. Commonwealth*, 24 Va.App. 627, 484 S.E.2d 614, 615–16 (1997). After hearing the evidence, the jury found Terry guilty as charged, and recommended a sentence of imprisonment of 17 years. The trial court ordered preparation of a pre-sentence report (requested by Terry's counsel) and a victim impact statement.[2]

At the sentencing hearing on November 1, 1995, the trial court reviewed the pre-sentence report and heard both Terry's allocution and testimony from the probation officer concerning the application of the advisory sentencing guidelines to Terry's conviction. At the conclusion of the sentencing hearing, the trial court imposed the jury's recommended sentence of 17 years. Because Terry indicated dissatisfaction with his trial counsel and stated that he wished to appeal his conviction on

---

1. Section 18.2–61(A) provides:
 If any person has sexual intercourse with a complaining witness who is not his or her spouse or causes a complaining witness, whether or not his or her spouse, to engage in sexual intercourse with any other person and such act is accomplished (i) against the complaining witness's will, by force, threat or intimidation of or against the complaining witness or another person, or (ii) through the use of the complaining wit-

ness's mental incapacity or physical helplessness, or (iii) with a child under age thirteen as the victim, he or she shall be guilty of rape.

2. Neither the pre-sentence report nor the victim impact statement were made part of the record, although the transcript of the sentencing hearing indicates that both were completed prior to the sentencing hearing.

grounds including ineffective assistance of counsel, the trial court granted Terry's request for new counsel and authorized a public defender to assume Terry's defense on appeal. .

When the trial transcript became available, shortly after the sentencing hearing, Terry's trial counsel reviewed it and found over thirty-five errors, which he noted and forwarded to Terry's newly appointed appellate counsel. On January 17, 1996, Terry's appellate counsel filed objections to the trial transcript, requesting corrections of the record based on the errors noted by trial counsel. Most of the identified transcript errors were of a minor nature, such as misspelled words or typographical errors. Similarly inconsequential was the omission of one question and answer relating to the victim's address and a bench conference that should have been part of the record. Although none of these errors was significant, the same cannot be said of a further so-called error forwarded to Terry's appellate counsel by his trial counsel. Specifically, Terry's trial counsel pointed out that the uncorrected transcript quoted the victim as testifying that her birthday was March 26, 1981, but that his notes from the preliminary hearing indicated that her birthday was June 26, 1981. Unlike the other transcript errors noted by Terry's trial counsel, this error can hardly be termed minor, as it relates directly to an element of the offense of statutory rape, namely the victim's age. If the transcript correctly recorded the victim's testimony that her birth date is March 26, 1981, then she was thirteen on the date of the rape and hence the charge of statutory rape must fail, for there was no other record evidence of the victim's age.

It is not uncommon in Virginia trial practice to hold a post trial hearing to address alleged transcript errors. *See* Va.Sup.Ct.R. 5:11(d) (2000); *see also Lamb v. Commonwealth,* 222 Va. 161, 279 S.E.2d 389 (1981) (outlining the Supreme Court of Virginia's preferred procedure in correcting errors in the trial transcript). Accordingly, Terry's appellate counsel sent Terry a letter on January 16, 2000, indicating that he would request a hearing on the matter of the trial transcript corrections and keep Terry informed of any new developments. Terry received this letter on January 18, 2000, and immediately responded to his appellate counsel requesting to be present at the hearing. In this letter, Terry apparently indicated that he did not agree with all the corrections and wished to attend the proceeding. He also inquired whether it was possible for the transcript to be stricken from the record.[3] Terry's request to be present was of no avail, however, as the hearing was held on January 26, 1996, several days before Terry's appellate counsel received Terry's letter requesting to be present at the hearing. At the hearing, the trial court inquired whether defendant waived his right to be present, and Terry's appellate counsel responded that he did.

At the hearing, Terry's trial counsel appeared as a witness to testify on the various transcript objections he had noted. On the issue of the victim's birth date testimony, trial counsel testified that he had no independent recollection of the actual testimony, but that his notes from previous hearings indicated that the victim's birth date was June 26, 1981, which, if true, would have made her twelve at the time of the rape. The prosecutor agreed that the correct date was June 26, 1981, but she did not indicate that she had an independent recollection of the victim's testimony on this point. Based on trial counsel's statement about his notes from the preliminary hearing and the fact that the prosecutor did not object, the trial court granted this requested change. The technical corrections were also allowed, and the trial court ordered that an errata

---

**3.** Although the record does not include a copy of Terry's letter to his appellate counsel, the substance of that letter is apparent from appellate counsel's response.

sheet be prepared and included with the record.[4]

On January 31, 1996, Terry's appellate counsel responded to Terry's earlier letter requesting to be present for the hearing concerning transcript errors. In this response, he explained that there was insufficient time to arrange for Terry's transportation to the hearing because it was essential that the hearing take place promptly. He also noted that, in his opinion, striking the transcript was not a viable option and that all of his objections had been granted.

Terry's appellate counsel subsequently appealed the conviction to the Court of Appeals of Virginia, alleging two grounds for relief: (1) that the victim's mother's testimony about earlier statements made by her daughter was improperly admitted; and (2) that Terry was improperly compelled to speculate as to the victim's motives to lie. The Court of Appeals rejected these arguments and affirmed Terry's conviction and sentence. *See Terry v. Commonwealth*, 24 Va.App. 627, 484 S.E.2d 614 (1997). There was no challenge to the conviction based on the original transcript testimony concerning the victim's birth date. Thereafter, Terry's petition for appeal to the Supreme Court of Virginia was denied. *See Terry v. Commonwealth*, No. 971109 (Va. Sept. 15, 1997) (unpublished opinion). On December 22, 1997, Terry filed a *pro se* petition for a writ of habeas corpus with the Circuit Court of the City of Richmond, which was denied. *See Terry v. Garraghty*, No. LE–62 (order entered April 24, 1998). Likewise, his *pro se* petition for appeal to the Supreme Court of Virginia was denied without a hearing. *See Terry v. Garraghty*, No. 981324 (Va. Oct. 30, 1998) (unpublished opinion).[5] Then, on April 28, 1999, Terry filed the instant

petition *pro se*. Liberally construing his claims, he alleges that:

(1) Terry's trial and appellate counsel were ineffective in that:

 (a) Trial counsel failed to object and request a bill of particulars when the evidence offered at trial varied from the information in the indictment;

 (b) Appellate counsel unlawfully waived Terry's right to be present at the hearing to correct the trial transcript and failed to object to trial counsel's testimony as to his recollection of the victim's birth date; and

 (c) Trial counsel failed to move to dismiss the indictment when the victim testified that her birth date was March 26, 1981, making her thirteen years old at the time of the alleged rape, and subsequently lied when he stated that his independent recollection was that she was born on June 26, 1981.

(2) Terry suffered unfair surprise at trial because the prosecutor failed to disclose prior to trial that the rape occurred on April 14, 1994, and the indictment indicated only that it occurred between April 1, 1994 and April 30, 1994;

(3) The indictment was defective because it did not specify the exact date of the alleged rape, but rather stated that it occurred on a date between April 1, 1994 and April 30, 1994; and

(4) Terry's Due Process right to be present during essential proceedings was violated when a hearing to correct the trial transcript was held in

---

4. The trial court also directed that the record include a transcript of the hearing to correct the transcript, as well as a statement of facts relating to the omitted bench conference.

5. The Opinion of the Supreme Court of Virginia states in full:

"Upon review of the record in this case and consideration of the argument submitted in support of the granting of an appeal, the Court is of [the] opinion there is no reversible error in the judgment complained of. Accordingly, the Court refuses the petition for appeal."

his absence and the testimony at that hearing directly conflicted with Terry's independent recollection of what was said at trial.

After preliminary consideration of the instant petition pursuant to Rule 4 of the Rules Governing § 2254 Cases, the Court directed respondent to show cause why this writ should not issue. Respondent then filed a Rule 5 Answer and Motion to Dismiss. Also, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir.1975), Terry was notified of the potentially dispositive nature of the motion and given the opportunity to file responsive materials. He has done so and this matter is now ripe for adjudication.

## II.

Analysis of claims (2), (3) and (4) properly begins with an assessment of respondent's contention that these claims must be dismissed as procedurally barred. The governing principles in this regard are well established.

██ Virginia considers a claim to be procedurally defaulted if the petitioner could have raised it on direct appeal, but failed to do so. *See Slayton v. Parrigan*, 215 Va. 27, 205 S.E.2d 680 (1974), *cert. denied*, 419 U.S. 1108, 95 S.Ct. 780, 42 L.Ed.2d 804 (1975). And, a state's finding of procedural default is entitled to a presumption of correctness,[6] provided two foundational requirements are met. First, the state court must explicitly rely on the procedural ground to deny petitioner relief. *See Ylst v. Nunnemaker*, 501 U.S. 797, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991); *Harris v. Reed*, 489 U.S. 255, 259, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989). Second, the state procedural rule that serves to default petitioner's claim must be an independent and adequate state ground for denying relief. *See Harris*, 489 U.S. at 260, 109 S.Ct. 1038; *Ford v. Georgia*, 498 U.S. 411, 111 S.Ct. 850, 112 L.Ed.2d 935 (1991). And, in this circuit, it is settled

that the *Slayton* rule qualifies as an adequate and independent state ground. *Mu'min v. Pruett*, 125 F.3d 192, 196 (4th Cir.), *cert. denied*, 522 U.S. 978, 118 S.Ct. 438, 139 L.Ed.2d 337 (1997) (mem.) ("the procedural default rule set forth in *Slayton* constitutes an adequate and independent state law ground for decision."). Thus, where a state court denies relief explicitly relying on a procedural default under *Slayton*, federal courts may not consider such claims on their merits unless petitioner can demonstrate that cause and prejudice exist to excuse the default or that the failure of the court to consider the claims would amount to a fundamental miscarriage of justice. *See Harris*, 489 U.S. at 260, 109 S.Ct. 1038; *Mackall v. Angelone*, 131 F.3d 442, 446 (4th Cir.1997), *cert. denied*, 522 U.S. 1100, 118 S.Ct. 907, 139 L.Ed.2d 922 (1998) (mem.).

██ Given these governing principles, the next task is to ascertain the state court's procedural basis for denying relief, which is complicated in this case because the last state court judgment contains no explicit rationale for the denial of the claims. *See Terry v. Garraghty*, No. 981324 (Va. Oct. 30, 1998) (unpublished opinion); *supra* note 5, at 549. Where this occurs, the federal court must "look through" that order to the last reasoned state court decision. *See Ylst*, 501 U.S. at 798, 111 S.Ct. 2590. If that last reasoned opinion explicitly imposed a procedural default, the federal court must presume that the later decision rejecting petitioner's claim did not silently disregard the procedural bar and consider the merits. *See id.; Bush v. Legursky*, 966 F.2d 897 (4th Cir.), *cert. denied*, 506 U.S. 1009, 113 S.Ct. 626, 121 L.Ed.2d 558 (1992). Moreover, a court's dismissal of a post-conviction petition based on "the reasons stated in respondent's Motion to Dismiss" is a sufficient finding of procedural default where the state argued a procedural bar alone in its motion. *See Bunch v. Thompson*, 949 F.2d 1354 (4th Cir.1991), *cert. denied*, 505

---

6. *See* 28 U.S.C. § 2254(d); *Clanton v. Muncy*, 845 F.2d 1238, 1241 (4th Cir.1988).

U.S. 1230, 112 S.Ct. 3056, 120 L.Ed.2d 922 (1992). Precisely this occurred here: Although the Supreme Court of Virginia's decision does not disclose the basis, a "look through" to the trial court's disposition of the matter discloses that claims (2), (3) and (4) were dismissed on *Slayton* grounds. Specifically, the trial court's order relies on the authority cited in the respondent's Motion to Dismiss.[7] The respondent's Motion to Dismiss clearly argues that petitioner's claims are procedurally defaulted under *Slayton. See* Resp't's Mot. to Dismiss at 15 (Mar. 11, 1998).

Thus, it is clear from the record that claims (2), (3) and (4) were not raised on direct appeal and that this was the explicit basis for the denial of habeas relief by the state court. It follows, then, that there can be no federal merits review of claims (2), (3) and (4) unless Terry can show cause and prejudice, or a substantial claim of actual innocence.

### A. *Claim (4)*

Whether claim (4) may be reviewed on the merits hinges on resolution of two distinct questions: (a) whether Terry had a constitutionally protected right to be present at the hearing to correct the trial transcript, and, if so, (b) whether this petition has overcome the procedural bar by establishing cause and prejudice or a sub-

stantial claim of actual innocence. Each of these issues is separately addressed.

### (i) *An Accused's Right to Be Present*

 An accused has the right under the Due Process Clause "to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings." *Faretta v. California*, 422 U.S. 806, 819 n. 15, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) (citation omitted). Yet, this right has not been extended to include a right to be present at all motions hearings before the trial or after the verdict. *See United States v. Lynch*, 132 F.2d 111, 112 (3d Cir.1942), *cert. denied Lynch v. U.S.*, 318 U.S. 777, 63 S.Ct. 831, 87 L.Ed. 1146 (1943). The critical question is not whether the accused would have avoided conviction by his presence, "but whether the [accused's] presence at the proceeding would have contributed to the [accused's] opportunity to defend himself against the charges." *Kentucky v. Stincer*, 482 U.S. 730, 744, 107 S.Ct. 2658, 96 L.Ed.2d 631 (1987). And, in the post-conviction context, a defendant need not be produced to address motions unless substantial issues of fact are in dispute.[8] In addition, violation of the right of a defendant to be present at certain stages of proceedings against him, as with violations of various other constitutional rights, "is subject to a

---

7. *See Terry v. Garraghty*, No. LE–62, at 1 (Cir.Ct. of the City of Richmond Apr. 24, 1998). The order states:

> Upon mature consideration of the petition of Tyrone William Terry for a writ of habeas corpus and the respondent's Motion to Dismiss and the authorities cited therein, and a review of the record in the criminal case of *Commonwealth v. Terry*, which is hereby made a part of the record in this matter, the Court finds for the reasons stated in the respondent's Motion to Dismiss that the petitioner is not entitled to the relief sought.

8. Courts have struggled with the question of which pre-trial or post-trial proceedings implicate the defendant's constitutional right to be present. *Compare United States v. Tipton*, 90 F.3d 861, 872 (4th Cir.1996) (noting the importance of a defendant's presence during voir dire to enable him to exercise effectively

his peremptory challenges); *United States v. Camacho*, 955 F.2d 950, 953 (4th Cir.1992) (citation omitted) ("We have recognized that an accused's absence during the jury selection process can potentially frustrate the fairness of a trial by denying the defendant an opportunity to 'give advice or suggestions to his lawyer concerning potential jurors.' "); *United States v. Nelson*, 570 F.2d 258 (8th Cir. 1978) (holding that defendant must be present during communications between a trial court and a deliberating jury); *with United States v. Gregorio*, 497 F.2d 1253 (4th Cir.1974) (concluding that a defendant has no constitutional right to be present in chambers while jury instructions are formulated by counsel and the trial judge), *overruled on other grounds by United States v. Rhodes*, 32 F.3d 867 (4th Cir.1994).

·

552

harmless error analysis." *Rushen v. Spain,* 464 U.S. 114, 119 n. 2, 104 S.Ct. 453, 78 L.Ed.2d 267 (1983).

Although the circuits have not addressed the specific issue of whether an accused has a constitutional right to be present at a post-sentencing hearing to correct the trial transcript, analogous cases and principles make clear that such a right exists in the circumstances at bar, for there is little doubt that Terry's presence at the hearing to correct the transcript "would have contributed to [his] ... opportunity to defend himself against the charges." *Stincer,* 482 U.S. at 744, 107 S.Ct. 2658. This is so because a substantial issue of fact relating to the validity of the underlying charge of statutory rape was raised at the hearing. And significantly, Terry's appellate counsel had not been present at the trial and was therefore in no position to contradict statements made by Terry's trial counsel. Moreover, Terry's trial counsel specifically stated that he had no independent recollection of the victim's actual trial testimony. By contrast, Terry claims to have an independent recollection that the victim gave her birth date as March 1981. It follows that had he been present at the hearing, he would have been in a position to contribute to his defense by testifying in this regard. And, had this occurred, the trial court might conceivably have declined to make any correction in the trial transcript concerning the victim's birth date testimony, in which event Terry's conviction would have been vulnerable to a motion to vacate on the ground of actual innocence. In these circumstances, it is apparent that Terry's presence at the post-trial transcript hearing "would have contributed to [his] opportunity to defend himself against the charges," from which it follows that he had a due process right to be present at the hearing. *Stincer,* 482 U.S. at 744, 107 S.Ct. 2658.

But this conclusion is not the end of the analysis, as this due process claim is subject to the procedural bar and cannot be federally reviewed absent a showing of cause and prejudice, or a substantial claim of actual innocence.

**(ii) *Cause***

The existence of cause ordinarily turns on a showing of: (1) a denial of effective assistance of counsel, (2) a factor external to the defense which impeded compliance with the state procedural rule, or (3) the novelty of the claim. *See Murray v. Carrier,* 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *Coleman v. Thompson,* 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Clozza v. Murray,* 913 F.2d 1092 (4th Cir.1990), *cert. denied,* 499 U.S. 913, 111 S.Ct. 1123, 113 L.Ed.2d 231 (1991); *Clanton v. Muncy,* 845 F.2d 1238, 1241–42 (4th Cir.), *cert. denied,* 485 U.S. 1000, 108 S.Ct. 1459, 99 L.Ed.2d 690 (1988). Yet, an attorney's error short of constitutional ineffectiveness does not constitute cause, whether the error arises from inadvertence, ignorance, or strategic choice. *See Carrier,* 477 U.S. at 487–88, 106 S.Ct. 2639; *see also Griffin v. Aiken,* 775 F.2d 1226 (4th Cir.1985), *cert. denied,* 478 U.S. 1007, 106 S.Ct. 3301, 92 L.Ed.2d 715 (1986). Attorney errors constitute cause for procedural default only if they are prejudicial under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See Giarratano v. Procunier,* 891 F.2d 483 (4th Cir.1989), *cert. denied,* 498 U.S. 881, 111 S.Ct. 222, 112 L.Ed.2d 178 (1990); *Waye v. Townley,* 871 F.2d 18 (4th Cir.), *cert. denied,* 491 U.S. 910, 109 S.Ct. 3202, 105 L.Ed.2d 710 (1989).

To prove an ineffective assistance of counsel claim, a petitioner must satisfy the clearly established test set forth in *Strickland.* First, the petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688, 104 S.Ct. 2052. That is, "the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." *Id.* For this prong, "[j]udicial scrutiny of counsel's per-

formance must be highly deferential," *id.* at 689, 104 S.Ct. 2052, and courts must "presume that challenged acts are likely the result of sound trial strategy." *Spencer v. Murray,* 18 F.3d 229, 233 (4th Cir. 1994). However, courts should not search for possible tactical reasons for a counsel's actions in hindsight when they clearly did not apply at the time counsel acted. *See Griffin v. Warden,* 970 F.2d 1355, 1358 (4th Cir.1992). In this regard, "tolerance of tactical miscalculations is one thing; fabrication of tactical excuses is quite another." *Id.* at 1359 (citing *Kimmelman v. Morrison,* 477 U.S. 365, 386–87, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986)). Second, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052; *see also Soering v. Deeds,* No. 99–6498, slip op. at 9–10 (4th Cir. June 30, 2000). Finally, it is important to keep in mind that "[t]he petitioner must show both deficient performance and prejudice; the two are separate and distinct elements of an ineffective assistance claim." *Spencer,* 18 F.3d at 232–33.

■■■ Measured against this standard, Terry's trial and appellate counsel made objectively unreasonable errors under *Strickland.* First, Terry's trial counsel failed to investigate the transcript error that could possibly have established his client's innocence and required the trial court to vacate the conviction. Instead, trial counsel, without his client's knowledge or approval, testified at the transcript hearing about the victim's age at the time of the incident based not on any personal recollection of the victim's actual trial testimony, but on notes from pre-trial hearings. Second, Terry's appellate counsel received the trial counsel's list of errors in the transcript before the hearing was scheduled. This list clearly identified that the stated birth date of the victim was in question. The central importance of this fact was obvious; Terry's appellate counsel

was plainly on notice that one of the proposed corrections involved an appealable issue. Nevertheless, he: (i) failed to consult with Terry; (ii) accepted Terry's trial counsel's corrections as fact; and, (iii) moved to change the transcript without first checking with Terry or independently determining the victim's actual birth date. These errors of counsel are objectively unreasonable under *Strickland.*

■■■ *Strickland*'s second prong is also met because the errors of Terry's trial and appellate counsel were plainly prejudicial. Respondent does not dispute Terry's averment that had he been present at the hearing, he would have objected to the proposed change in birth date based on his personal recollection. This is especially significant because no one at the transcript hearing was able to address the age issue on the basis of personal recollection. Had the trial court determined the victim was in fact thirteen, Terry could have sought vacation of the conviction on this ground. And, had the trial court concluded otherwise, Terry would at least have been able to preserve the issue for appeal. In these circumstances, Terry has established the requisite cause for purposes of overcoming the procedural default.

(iii) *Prejudice*

Terry must also establish that the failure to preserve claim (4) resulted in prejudice to his case. The governing principles here are also well settled.

■■■ To overcome a procedural bar, a petitioner must show that the error creating the bar worked to his actual and substantial disadvantage, infecting the entire trial with an error of constitutional magnitude. *See Carrier,* 477 U.S. at 487–88, 106 S.Ct. 2639; *United States v. Frady,* 456 U.S. 152, 170, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *Felton v. Barnett,* 912 F.2d 92 (4th Cir.1990) (holding a petitioner was not prejudiced by counsel's failure to object to discrimination in selection of the grand jury foreman), *cert. denied,* 498 U.S. 1032,

111 S.Ct. 693, 112 L.Ed.2d 683 (1991); *Waye v. Townley*, 871 F.2d 18 (4th Cir.) (concluding that the petitioner was not prejudiced by his attorney's failure to object to a jury instruction on intent where the evidence of intent was uncontradicted), *cert. denied*, 491 U.S. 910, 109 S.Ct. 3202, 105 L.Ed.2d 710 (1989); *Wilson v. Murray*, 806 F.2d 1232, 1236 n. 14 (4th Cir. 1986), *cert. denied*, 484 U.S. 870, 108 S.Ct. 197, 98 L.Ed.2d 149 (1987); *Bond v. Procunier*, 780 F.2d 461 (4th Cir.1986).

Because of the claims raised in the instant case, there are two separate required showings of prejudice. The first showing of prejudice is necessary under the second prong of *Strickland* to show "cause" to overcome the procedural bar and is discussed in the previous section. The second showing of prejudice is necessary to meet the second prong, or the "prejudice" prong, of the procedural bar. The analysis of prejudice completed in the previous section under the second prong of *Strickland* is essentially the same analysis needed to overcome the procedural bar. Terry thus has established both cause and prejudice as required to overcome a procedural default. And in this regard, since it is clear that Terry's absence at the transcript hearing was a due process violation, the next step in the analysis of claim (4) is to determine whether this violation was harmless error.

#### (iv) *Actual Innocence*

In the alternative, Terry can also overcome the procedural bar by asserting a substantial claim of actual innocence. In the instant case, Terry makes such a claim.

■ Where the constitutional violation has probably resulted in the conviction of one who is actually innocent, the writ may be granted even without showing of cause for procedural default. *See Carrier*,

477 U.S. at 496, 106 S.Ct. 2639. In such cases, the principles of comity and finality yield to the imperative of correcting a fundamentally unjust incarceration. *Engle v. Isaac*, 456 U.S. 107, 135, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). Furthermore, errors of fact are insufficient to establish actual innocence absent an independent constitutional violation. *See Herrera v. Collins*, 506 U.S. 390, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993) (holding that a claim of actual innocence is not in itself a constitutional claim, but instead a narrow gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits). A petitioner must establish that, "in the light of all the evidence, ... it is more likely than not that no reasonable juror would have convicted him." *Schlup v. Delo*, 513 U.S. 298, 327–28, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).[9] And further, "it is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 118 S.Ct. 1604, 1611, 140 L.Ed.2d 828 (1998) (citing *Sawyer v. Whitley*, 505 U.S. 333, 339, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992)).

■ A question of actual innocence arises where, as here, there is a dispute over whether the trial record accurately records certain testimony that is the only record evidence on an essential element of the charged crime. Terry implicitly asserts his actual innocence of the charged crime when he states he personally remembers the victim testifying that her birthday was in March, not June. If the victim was thirteen at the time of the rape, Terry clearly is innocent of rape as defined by Virginia Code § 18.2–61(A)(iii). Because Terry has asserted a plausible claim of actual innocence, claim (4) may, for this

9. *See also O'Dell v. Netherland*, 95 F.3d 1214, 1246 (4th Cir.1996) ("the proper test for whether a habeas petitioner has established that his case is 'extraordinary' enough to fall into that 'narrow class of cases,' which implicates a fundamental miscarriage of justice is whether that petitioner has shown that a constitutional violation has probably resulted in the conviction of one who is actually innocent.").

alternative reason, be reviewed on the merits.

Accordingly, Terry has overcome the procedural bar with a showing of cause and prejudice, or in the alternative, by establishing a substantial claim of actual innocence. Thus, claim (4) may be decided on the merits.

In the circumstances of this action, a merits review of claim (4) is particularly difficult because the actual age of the victim is nowhere to be found in the record or in respondent's exhibits. No birth certificate was admitted into the record. At trial, the only evidence of the victim's age was her testimony as to her birth date, which testimony is sharply disputed.

■ Three possible scenarios for the transcript discrepancy regarding the victim's age are possible: (1) the victim was born on June 26, 1981, and thus was twelve at the time of the rape, and correctly testified to her birth date, but the court reporter mistakenly recorded the birth month as March; (2) the victim was born on June 26, 1981, but mistakenly and inadvertently gave her birth date as March 26, 1981, and the court reporter correctly transcribed her testimony, which went unchallenged at trial; or (3) the victim was in fact born on March 26, 1981, and so testified, and therefore was thirteen at the time of the rape, all of which was correctly reported in the original transcript. Only the third possibility supports the petitioner's claim of actual innocence. Indeed, if the third possible scenario occurred, actual innocence has been established. If either of the first two possible scenarios occurred, it must be determined whether or not harmless error occurred.

■ Harmless error analysis only applies to those errors that: (1) occur during presentation of the case to the jury; and, (2) can be assessed to determine if

error was harmless beyond a reasonable doubt. *See United States v. Blevins*, 960 F.2d 1252, 1255 (4th Cir.1992). In essence, the reviewing court must be able to say "with fair assurance, after pondering all that happened ... that the judgment was not substantially swayed by the error." *See Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946); *Munn v. Algee*, 924 F.2d 568, 572 (5th Cir.1991) ("[A]n error is harmless if the court is sure, after reviewing the entire record, that the error did not influence the jury or had but a very slight effect on its verdict.").

Therefore, an evidentiary hearing must be held to determine the victim's age at the time of the rape and whether harmless error occurred.[10]

**B.** *Claims (2) and (3)*

■ Terry argues in claims (2) and (3) that the failure of the state to provide the exact date of the alleged rape to him prior to trial caused prejudice in the form of unfair surprise. Virginia law requires that "[t]he indictment or information shall be a plain, concise and definite written statement, (1) naming the accused, (2) describing the offense charged, (3) *identifying the county, city or town* in which the accused committed the offense, and (4) reciting that the accused committed the offense on or about a certain date." Va.Code § 19.2–220. The indictment in issue meets this standard; it names the accused, describes the offense, identifies the location and states that it occurred in April 1995. Additionally, Terry's counsel received adequate notice that the event occurred on the only evening in April that Terry had stayed overnight at the victim's house, providing him with enough information to determine the exact date. Because Terry's attack on the sufficiency of the indictment is without merit, counsel was not objective-

---

**10.** Because a period of five years has passed since the trial, it may be difficult, if not impossible, to determine the precise nature of the victim's trial testimony about her birth

date. Less difficult, of course, is the task of determining the victim's actual age at the time of the rape.

ly unreasonable in failing to raise claims (2) and (3). Moreover, nothing in these claims supports an allegation of actual innocence. Therefore, because Terry has failed to show cause and prejudice or a miscarriage of justice regarding claims (2) and (3), they must be dismissed as procedurally barred.

### III.

Remaining for consideration by this Court is Terry's first claim, which consists of three sub-parts, each asserting a separate instance of ineffective assistance of counsel. This claim is not procedurally defaulted and therefore must be reviewed on the merits under the standard set forth in 28 U.S.C. § 2254(d).

■ When a state court has addressed the merits of a claim raised in a federal habeas petition, a federal court cannot grant the petition based on the claim unless the state court's adjudications are contrary to, or an unreasonable application of, clearly established federal law, or are based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d).[11] The evaluation of whether a state decision is "contrary to" or "an unreasonable application of" federal law is based on an independent review of each standard. *See Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000) ("*T.Williams* "). A state court determination meets the "contrary to" standard "if the state court 'arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a

case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts.' " *Evans v. Smith*, 220 F.3d 306, 313 (4th Cir.2000) (quoting *T. Williams*, 529 U.S. at ——, 120 S.Ct. at 1523) (alteration in original). Under the "unreasonable application" clause, the writ should be granted if the federal court finds that the "state court 'identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.' " *See Evans*, at 313–14 (quoting *T. Williams*, 529 U.S. at ——, 120 S.Ct. at 1523) (alteration in original). Moreover, this standard of reasonableness is an objective one. *See T. Williams*, 529 U.S. at ——, 120 S.Ct. at 1524.[12]

■ Whether a state court's application of federal law to a set of facts is an objectively reasonable application of clearly established federal law will thus depend upon the specific facts of the case as they were developed in the state court proceedings. In the instant case, the question is whether the state court's interpretation of the constitutional standard for finding counsel to be ineffective was contrary to or an unreasonable application of the law as set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), as discussed in section II above. In the instant case, the Supreme Court of Virginia applied the proper federal law by basing its denial on *Strickland.* This decision clearly was not contrary to this clearly established law. The remaining question

---

11. 28 U.S.C. § 2254(d) provides:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

12. The Court concluded that to the extent that the Fourth Circuit implied in *Green v. French*, 143 F.3d 865 (1998), *cert. denied*, 525 U.S. 1090, 119 S.Ct. 844, 142 L.Ed.2d 698 (1999), that the reasonableness standard was subjective and determined with reference to "reasonable jurists," the Fourth Circuit's holding was erroneous. *See id.*

is whether the state court's interpretation was unreasonable in light of settled Supreme Court jurisprudence.

## A. *Claim (1)(a)*

■ Terry's claim based on trial counsel's failure to request a bill of particulars is meritless. As noted, "[a defendant] has no constitutional right to a bill of particulars if the indictments are sufficient to give him notice of the nature and character of the offenses charged ... so that he can make his defense." *Williams v. Commonwealth*, 248 Va. 528, 450 S.E.2d 365, 372 (1994) (citing *Strickler v. Commonwealth*, 241 Va. 482, 404 S.E.2d 227, 233(Va.) *cert. denied*, 502 U.S. 944, 112 S.Ct. 386, 116 L.Ed.2d 337 (1991)). The indictment in the instant case plainly provided Terry with ample notice of the nature and circumstances of the charged offense. There is, moreover, no merit to the contention that there was any substantial variance between the indictment and the trial evidence. In the circumstances, it is apparent that the Supreme Court of Virginia's rejection of claim (1)(a) was not an unreasonable application of *Strickland* to the facts presented. Claim 1(a) must therefore be dismissed.

## B. *Claim (1)(b)*

Like claim (4), claim (1)(b) addresses Terry's right to be present at the hearing to correct the trial transcript for the purpose of disputing the victim's trial testimony as to her birth date.[13] Claim (1)(b) thus alleges that Terry's appellate counsel was ineffective for improperly waiving Terry's right to be present at the hearing to correct the trial transcript. As discussed in detail in Section II above, Terry's appellate counsel was ineffective in waiving this right and failing, as a result, to preserve the issue for appeal.

Because it is conceivable that the outcome could have been in Terry's favor, the Supreme Court of Virginia was unreasonable in applying *Strickland* to deny an evidentiary hearing. Therefore, to resolve claim (1)(b) it is necessary to hold an evidentiary hearing to determine whether Terry was prejudiced under the second prong of *Strickland* by his appellate counsel's objectively unreasonable action.

## C. *Claim (1)(c)*

The final claim alleges that Terry's trial counsel was ineffective for failing to raise the issue of the victim's age at trial and for improperly correcting the record of her birth date. If the victim was in fact thirteen, then Terry's trial counsel's failures are both objectively unreasonable and a correction of the errors would change the outcome of the case due to Terry's actual innocence. If the victim was twelve, however, this claim requires a slightly different analysis. If Terry's trial counsel had objected to the victim's testimony at trial, then the prosecution would have rebutted by providing evidence as to her true age. If that age was under the statutory requirement, then Terry's trial counsel was not ineffective because the outcome would have been no different even if he had objected, or had challenged the issue at the hearing to correct the trial transcript. Thus, the second prong of *Strickland* is only met for claim (1)(c) *if* the victim was thirteen. The Supreme Court of Virginia's failure to determine the actual age of the victim before dismissing this claim is an unreasonable application of *Strickland*. Because the victim's age is not in the record, an evidentiary hearing is necessary to determine the victim's actual age and to determine whether Terry's right to be

---

**13.** This factual dispute cannot be deemed to have been waived by Terry because he was not present at the hearing which was held to resolve it. As discussed above, Terry did not waive his right to be present at this hearing. Although Terry was present at trial and there-fore theoretically able to raise this issue at the time it occurred, he also was entitled to rely upon his counsel to determine whether the testimony presented sufficient evidence to prove the charge.

present at the hearing to correct the transcript was violated.

## IV.

The Antiterrorism and Effective Death Penalty Act ("AEDPA") amended the federal habeas statute in such a way as to permit new evidentiary hearings on habeas review only in limited circumstances. *See* 28 U.S.C. § 2254(e)(2).[14] Recently, the Supreme Court recognized that the opening clause of this provision only applies if a petitioner is at fault in failing to develop the factual basis. *See Williams v. Taylor,* 529 U.S. 420, 120 S.Ct. 1479, 1488, 146 L.Ed.2d 435 (2000). Thus, § 2254(e)(2) does not apply when the factual basis has not been developed due to the fault of the state and not due to a lack of diligence on petitioner's part. *Id.* at 1488–89. Further, petitioners who deny the state the fair opportunity to address their claims on the merits should not be given an evidentiary hearing in federal court in the interest of comity. *See Cardwell v. Greene,* 152 F.3d 331, 337 (4th Cir.1998). However, "the word 'fail' cannot bear a strict-liability reading, under which a federal court would disregard the reason for the shortcomings of the record." *Burris v. Parke,* 116 F.3d 256, 259 (7th Cir.), *cert. denied,* 522 U.S. 990, 118 S.Ct. 462, 139 L.Ed.2d 395 (1997). Such an interpretation would insulate a state's decisions from collateral attack in federal court and defeat the purpose of the statute. *Id.*

The factual basis in the record is deficient because what the victim actually testified to when asked for her birth date remains unresolved. Although the trial court held a hearing and addressed this issue, Terry was not present, and no one at the hearing testified that they had an independent recollection of what the victim said. Because Terry was not at fault for this deficiency in the record, AEDPA does not bar an evidentiary hearing on habeas relief.

## V.

For the foregoing reasons, petitioner's claims (1)(a), (2) and (3) must be dismissed. Whether claims (1)(b), (1)(c) and (4) merit habeas relief must await the results of a hearing to ascertain, inter alia, the victim's age at the time of the rape.

Accordingly, pursuant to Rule 8 of the Rules Governing § 2254 Cases, this issue will be referred to a United States Magistrate Judge to develop the facts necessary to determine the victim's age at the time of the rape and to explore and resolve any other questions that may be necessary in order to determine whether habeas relief is warranted here. In this regard, the Magistrate Judge, of course, may proceed in any manner he or she may see fit.[15]

A Report and Recommendation should be issued as promptly as may be reasonable under the circumstances. Also, pursuant to Rule 8 of the Rules Governing

14. As amended by AEDPA, 28 U.S.C. § 2254(e)(2) provides:
> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
> (A) the claim relies on—
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
> (B) the facts underlying the claim would be sufficient to establish by clear and convinc-

ing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

15. No opinion is expressed here on whether judicial notice may be taken of the victim's birth certificate. *Compare Johnson v. Morgenthau,* 160 F.3d 897 (2d Cir.1998) (judicial notice of a party's death appropriate where the court was provided with a death certificate); *United States v. Lebron–Gonzalez,* 816 F.2d 823 (1st Cir.1987) (dicta) (judicial notice of a birth certificate to prove citizenship "does not seem to fall within the contours of Fed.R.Evid. 201.").

§ 2254 Cases, the Magistrate Judge shall appoint counsel [16] for Terry.

An appropriate Order shall issue.

16. Although Terry's request to proceed *in forma pauperis* was denied as moot when Terry paid the $5.00 filing fee, it is clear from the Inmate Account Report Form provided by the Lawrenceville Correctional Center inmate accountant that petitioner is indigent and therefore eligible for appointment of counsel pursuant to Rule 8(c).